ERIC A. NYBERG, ESQ. (Bar No. 131105)
SARAH L. LITTLE, ESQ. (Bar No. 215635)
**KORNFIELD, NYBERG, BENDES, KUHNER & LITTLE, P.C.**
1970 Broadway, Suite 600
Oakland, California 94612
Telephone: (510) 763-1000
Facsimile: (510) 273-8669
Email: e.nyberg@kornfieldlaw.com
Email: s.little@kornfieldlaw.com

Attorneys for Debtor Simona Farrise Best

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>Simona Farrise Best,<br><br>                                Debtor. | Case No. 19-41931 RLE<br><br>Chapter 7<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INVOLUNTARY BANKRUPTCY CASE**<br><br>Date: October 17, 2019<br>Time: 11:00 a.m.<br>Ctrm: 201<br>      U.S. Bankruptcy Court<br>      1300 Clay Street<br>      Oakland, CA 94612 |

# TABLE OF CONTENTS

Page

I. STATEMENT OF FACTS……...…………………………………………………………1

II. AUTHORITY FOR THE MOTION TO DISMISS…………………………………..2

    A. The Court Should Dismiss the Involuntary Petition Because It Fails To Satisfy the Requirements of 11 U.S.C. § 303(b), or, in the Alternative, It Should Abstain From Exercising Jurisdiction in this Matter Pursuant to 11 U.S.C. Section 305(a)..………………………………………..…………………….....2

        1. The Involuntary Petition Should Be Dismissed Because the Debtor Has 12 or More Creditors…………………………………………....2

        2. Even if the Court Were to Determine that the Debtor Has Fewer Than 12 Creditors, the Petition Must Be Dismissed Because Creditor's Claim is Subject to Bonafide Dispute……....................3

        3. The Involuntary Petition Should be Dismissed Because it is Not In The Best Interest of the Debtor and Creditors…………………………...3

        4. The Bankruptcy Case Serves No Bankruptcy Purpose……………………..5

        5. The Petitioning Creditor Filed the Involuntary Petition in Bad Faith, to Forum Shop, and to Gain a Temporal Advantage in Existing Litigation……...........................................................5

    B. The Court Should Order Petitioning Creditor to Pay Debtor's Attorneys' Fees and Costs and Punitive Damages Pursuant to 11 U.S.C. § 303(i)………………………………………………..8

III. CONCLUSION……………………………………………………………………...12

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Higgins v. Vortex Fishing Systems, Inc.*,
 (9th Cir. 2004) 379 F.3d 701, 707……………………………………………………….. 4, 9

*In re Advance Press & Litho, Inc.*,
 46 B.R. 700, 701 (Bankr. D. Colo. 1984)……………………………………………… 9, 10

*In re Atlas Mach. & Iron Works*,
 190 B.R. 796, 804 (Bankr. E.D. Va. 1995)……………………………………………….10

*In re Cannon Express Corporation*,
 280 B.R. 450, 455 (Bankr. W.D. Ark. 2002)……………………………………………11

*In re Eastman*,
 (B.A.P. 9th Cir. 1995) 188 B.R. 621, 624……………………………………….......6, 7

*In re Fox Island Square Partnership*,
 106 B.R. 962, 968-969 (Bankr. N.D. Ill. 1989)………………………………………….10

*In re Goldsmith*,
 30 B.R. 956, 963 (Bankr. E.D. N.Y. 1983)……………………………………………….11

*In re Johnston Hawks, Ltd.*,
 72 B.R. 361, 365-66 (Bankr. D. Hawaii 1987)…………………………………………...8, 11

*In re Kearney*,
 121 B.R. 642, 646-647 (Bankr. M.D. Fl. 1990)………………………………………….10

*In re Laclede Cab. Co.*,
 76 B.R. 687, 693 (Bankr. E.D. Mo. 1987)……………………………………………..11

*Wechsler v. Macke Int'l Trade, Inc. (In re Macke International Trade, Inc.)*,
 370 B.R. 236, 247 (BAP 9th Cir. 2007)………………………………………...........4, 5, 6, 7, 9

*In re Marsch*,
 36 F.3d 825, 828 (9th Cir. 1994)…………………………………………………………10

*In re Oakley Custom Homes, Inc.*,
 168 B.R. 232, 241 (Bankr. D. Colo. 1994)……………………………………………...9, 10

*In re Southern Calif. Sunbelt Developers, Inc.*,
 608 F.3d 456, 465 (9th Cir. 2010)…………………………………………………………9

*In re Spade*,
 258 B.R. 221, 225 (Bankr. D. Colo. 2001)……………………………………….........7

*In re WLB-RSK Venture*,
 296 B.R. 509 (Bankr. C.D. Cal. 2003)……………………………………………..10

*In re Wavelength, Inc.*,
 61 B.R. 614, 621 (9th Cir. BAP 1986)……………………………………………..10

**STATUTES**

11 U.S.C. § 303(b)……………………………………………………………………….2, 3, 5, 7, 8

11 U.S.C. § 303(i)……………………………………………………………………….5, 8, 9, 10

11 U.S.C. § 305……………………………………………………………………………..2, 6, 7, 9

11 U.S.C. § 305(a)……………………………………………………………..1, 2, 3, 5, 6, 7, 8, 9

11 U.S.C. §707(a)…………………………………………………………………………………..6

Fed. R. Civ. P. 12(b)(6)……………………………………………………………………………..1

Fed. Rule of Bankruptcy Procedure1017(d)………………………………………………………..1

Fed. Rule of Bankruptcy Procedure2002(a)………………………………………………….......1

Fed. Rule of Bankruptcy Procedure 7012…………………………………………………............1

**OTHER AUTHORITIES**

2 Collier on Bankruptcy ¶ 305.02 (16th Ed.).……………………………………......................5

2 Collier on Bankruptcy ¶ 305.02[2] at 305-6 to 305-9………………………………………….7

Resnick, Alan N. & Sommer, Henry J.,
Collier on Bankruptcy ¶ 305.LH[2] at 305-12 to 305-13 (15th ed.rev.2005)………………...6

Debtor, Simona Farrise Best ("Debtor"), files this memorandum of points and authorities in support of her motion to dismiss the pending involuntary bankruptcy case ("Motion") under Federal Rule of Civil Procedure 12(b)(6), as incorporated in Federal Rule of Bankruptcy Procedure 7012, 11 U.S.C. § 305(a), and Rules 1011, 1017(d) and 2002(a) of the Federal Rules of Bankruptcy Procedure.

## I. STATEMENT OF FACTS

Debtor is an individual. Debtor's residential address is 7100 Westmoorland Drive, Berkeley, California 94705. [Declaration of Simona Farrise in Support of Motion to Dismiss Involuntary Bankruptcy Case ("Farrise Declaration"), p. 1, ¶4]

Debtor is the sole shareholder of the Farrise Law Firm, a California professional corporation (Farrise Declaration, p. 1, ¶3).

Debtor is a lawyer licensed to practice law in the State of California. (Farrise Declaration, p. 1, ¶1).

ACF 2006 Corp. (the "Petitioning Creditor") is aware that the address on the petition is <u>not</u> the Debtor's personal residence because it has sued the Debtor and her business in the United States District Court for the Northern District of California, Case No. 4:18-cr00029-YGR (the "District Court Action") for breach of contract for failure to timely make financial payments under the loan agreement that provided a line of credit for my law firm operation and to advance client case costs. (Farrise Declaration, p.2, ¶5).

The Petitioning Creditor agreed to join as a party to the Debtor's marital dissolution action, which is pending in Alameda County Superior Court (the "'Dissolution Action"), because the Petitioning Creditor seeks to obtain community property monies enjoined in the Dissolution Action to satisfy its debt and has actively participated in the Dissolution Action by filing pleadings and participating in various hearings. Petitioning Creditor has been a participant in the Dissolution Action for approximately one year. (Farrise Declaration, p.2, ¶5).

The involuntary petition is also false and misleading because in No. 7, it states the Debtor does not operate a business. This is false and the Petitioning Creditor knows that because it made a loan to the Debtor's business corporation, which the Debtor guaranteed. Further, the Petitioning

Memorandum of Points and Authorities in Support of
Motion to Dismiss Involuntary Bankruptcy Case

-1-

Case: 19-41931    Doc# 6    Filed: 09/16/19    Entered: 09/16/19 15:16:09    Page 5 of 16

Creditor sued both the Debtor and her business, a law corporation, in the District Court Action and it referenced the District Court Action in No. 8. (Farrise Declaration, p. 2, ¶6)

The amount and liability of petitioner's claim is disputed. The Debtor claims she has substantial damage claims against Petitioning Creditor arising from Petitioning Creditor's breach of an agreement between the Debtor and Petitioning Creditor entered into in the District Court Action which modified the terms of the loan contract. (Farrise Declaration, p. 2, ¶7)

As of the petition date, the Debtor had more than twelve (12) creditors, excluding employees and insiders. (Farrise Declaration, p. 2, ¶8]

It appears that Petitioning Creditor filed the involuntary petition merely to gain a litigation advantage against the parties in both the District Court Action and the Dissolution Action and to shop for a more favorable forum. The petition was filed on August 26, 2019 which effectively stayed the impact to Petitioning Creditor of an adverse ruling in the Dissolution Action that would allow monies held to be withdrawn from the enjoined bank account on August 26, 2019 and used to support the education needs of the Debtor's minor child. By Petitioning Creditor's involuntary filing, no withdrawal could occur because the Petitioning Creditor filed a Notice of Bankruptcy in the Dissolution Action. (Farrise Declaration, p. 2, ¶9)

## II. AUTHORITY FOR THE MOTION TO DISMISS

There are three independent grounds upon which the Court should dismiss the involuntary petition: (1) Debtor has 12 or more creditors, and therefore, 3 or more petitioning creditors are required; (2) Petitioning Creditor's claim is subject to a bonafide dispute as to liability and amount; and (3) the case should be dismissed under 11 U.S.C. Section 305 as it is not in the best interest of the estate and creditors.

**A. The Court Should Dismiss The Involuntary Petition Because It Fails To Satisfy The Requirements Of 11 U.S.C. § 303(b), Or, In The Alternative, It Should Abstain From Exercising Jurisdiction In This Matter Pursuant To 11 U.S.C. § 305(a).**

**1. The Involuntary Petition Should Be Dismissed Because the Debtor Has 12 or More Creditors.**

This case must be dismissed because the Debtor has at least twelve (12) creditors and Petitioning Creditor actually knows it is not the only creditor because it is a party to the

Dissolution Action wherein the Debtor's ex-husband claims he is a creditor who is owed monies as well as the Debtor's dissolution attorney, JAMS, who provided judicial services in the marital dissolution context. 11 U.S.C. § 303(b)(1) and (2) require that an involuntary bankruptcy petition be commenced by three (3) or more entities unless the debtor has <u>fewer</u> than 12 creditors.

ACF 2006 Corp. is the sole petitioning creditor and appears to have done no pre-petition inquiry to determine the number and identities of Debtor's creditors. Rather, Petitioning Creditor seeks to mislead the Court when it falsely represents itself as the sole creditor knowing that to be false. On the petition date, however, the Debtor had at least 12 creditors, excluding employees and insiders. The actual number is in fact more than 12. In any event, three petitioning creditors were required to commence this case. Because the Debtor has twelve (12) or more creditors, the involuntary petition filed by Petitioning Creditor must be dismissed pursuant to 11 U.S.C. § 303(b).

**2.    Even if the Court Were to Determine that the Debtor has Fewer than 12 Creditors, the Petition Must be Dismissed Because Petitioning Creditor's Claim is Subject to Bonafide Dispute.**

Even assuming *arguendo* that the Court were to determine that the Debtor had less than 12 creditors, the petition still fails as a matter of law because Petitioning Creditor's claim is the subject of a bonafide dispute.

As set forth in the Farrise Declaration, the Debtor asserts she has substantial breach of contract claims against Petitioning Creditor. The dispute arises from the Petitioning Creditor's breach of an agreement and stipulation entered into between the Debtor and Petitioning Creditor in the District Court Action. Debtor asserts there are no amounts owing to Petitioning Creditor. Thus, the amount of Petitioning Creditor's claim is the subject of a bonafide dispute.

**3.    The Involuntary Petition Should Be Dismissed Because It Is Not In The Best Interest of the Debtor and Creditors.**

The Court has the power to dismiss an involuntary bankruptcy petition if doing so would be in the best interest of the debtor and creditors. 11 U.S.C. § 305(a) and (c) provide, in pertinent part, as follows:

    (a) The court, after notice and a hearing, may dismiss a case under this

title, or may suspend all proceedings in a case under this title, at any time if –

(1) The interests of creditors and the debtor would be better served by such dismissal or suspension;

(c) An order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of title 28 or by the Supreme Court of the United States under section 1254 of title 28.

Whether "the interests of creditors and the debtor would be better served by such dismissal" is based on the totality of the circumstances. *Wechsler v. Macke Int'l Trade, Inc.* (*In re Macke International Trade, Inc.*), 370 B.R. 236, 247 (BAP 9th Cir. 2007). For the reasons set forth below, the Debtor respectfully submits that dismissal would be in the best interests of the Debtor and its creditors.

The filing of any involuntary bankruptcy case can cause significant harm to the alleged debtor. As the Ninth Circuit Court of Appeals noted in *Higgins v. Vortex Fishing Systems, Inc.* (9th Cir. 2004) 379 F.3d 701, 707: "Filing an involuntary petition should be a measure of last resort because even if the petition is filed in good-faith, it can 'chill… the alleged debtor's credit and sources of supply,' and 'scare away his customers.'" [Citations omitted.] The harm to an alleged debtor was further elaborated on by the Ninth Circuit Bankruptcy Appellate Panel in *Macke*:

> [B]eing targeted by an involuntary bankruptcy petition is a disruptive and, in many cases, financially traumatic event for the alleged debtor. Resources, including time and money, must be diverted from other commitments to defend against the petition. Moreover, pending a resolution of the issues by the Bankruptcy Court, the alleged debtor exists in a financial interstice necessarily uncertain of its future, restricted in its ability to make normal business decisions and plans. The pendency of the bankruptcy petition may cause suppliers, customers and investors to be reluctant to deal with the debtor. And even if adjudication of the bankruptcy relief proves unwarranted, and the petition is eventually dismissed, the debtor may suffer considerable loss or damages from the process.

*In re Macke International Trade, Inc., supra,* 370 B.R. at 246.

There is no need for an involuntary bankruptcy. According to the Petitioning Creditor, it is the only creditor. It has a pending action against the Debtor in the District Court Action. It has intervened in the Debtor's Dissolution Action. The bankruptcy does nothing other than perhaps give them some sort of tactical advantage in the Dissolution Action or to attempt to backdoor rulings it does not like in the Dissolution Action. The costs of a Chapter 7 trustee and professionals will only serve to diminish the value of any assets of the Debtor to the detriment of the Debtor and her creditors.

### 4. The Bankruptcy Case Serves No Bankruptcy Purpose.

"The absence of a true bankruptcy purpose (e.g., debt adjustment, breathing spell from creditors, and need for discharge and fresh start) is a significant factor in favor of granting Section 305(a)(1) relief." See 2 Collier on Bankruptcy ¶ 305.02 (16th Ed.) Here, the Debtor neither seeks nor needs what a bankruptcy case provides to a debtor. The Debtor does not seek to adjust her debts, nor is she looking for a fresh start. Furthermore, the Debtor has not repaid any insider loans, and has not made any payments that could be deemed as preferential and recoverable by a bankruptcy trustee. In light of the foregoing, the Debtor respectfully asserts that there is no legitimate bankruptcy purpose for this case.

### 5. The Petitioning Creditor Filed the Involuntary Petition in Bad Faith, to Forum Shop, and to Gain a Temporal Advantage in Existing Litigation.

The courts uniformly read § 303(b) of the Bankruptcy Code to include an implicit requirement of good faith. See 2 Collier on Bankruptcy ¶ 305.02 (16th Ed.) This issue was addressed by the Ninth Circuit BAP. In *Macke*, Lawrence Wechsler ("Wechsler") sued Macke for patent infringement. Wechsler got judgment against Macke and its owner for $650,000. Macke had incurred $900,000 in attorneys' fees, which it could not pay. Deciding to wind up, Macke did an assignment for the benefit of creditors. The assignee liquidated Macke's assets, recovering only $10,500. Though he recieved notice of the assignment, Wechsler did not file a claim to participate in the distribution. *Macke, supra,* 370 B.R. at 241.

Wechsler filed an involuntary Chapter 11 petition against Macke, and Macke moved to dismiss. Macke alleged, pursuant to § 303(i), that Wechsler was guilty of bad faith, contending

that he filed the petition to gain a litigation advantage over Macke in the pending appeal by increasing the litigation costs in bankruptcy court. Macke also sought dismissal under § 305(a) because dismissal would better serve the interests of the creditors and Macke. Macke maintained that all of its assets had been liquidated, that there was nothing to reorganize, and that little purpose could be served by a Chapter 11 case. *Macke, supra,* 370 B.R. at 242.

The bankruptcy court dismissed the case under § 305(a) finding that dismissal was in the best interest of the debtor and creditors:

> This is a two-party dispute between [Macke] and a single creditor with a long history of litigation. [Macke] has made allegations that this petition was filed by Wechsler in order to gain an advantage in the pending appeal. Finally, this filing appears to lack a bankruptcy purpose: [Macke] was not in need of debt adjustment, does not need a breathing spell from creditors, and does not need a discharge and a fresh start… There appears to be nothing to reorganize or even liquidate. If there is, the Assignee had notice of the allegations made by Wechsler regarding additional assets and can pursue those in state court, if necessary. However, the continuation of this case would only lead to administrative expenses, and would be a waste of judicial resources.

*Macke, supra,* 370 B.R. at 243.

The BAP went on to analyze the bankruptcy court's dismissal of the case under § 305(a), observing that:

> [N]otwithstanding a bankruptcy court's jurisdiction over an involuntary case pursuant to § 303, § 305(a) provides that the bankruptcy court may dismiss an involuntary case, or suspend all proceedings in that case, and thereby decline to exercise that jurisdiction. *See Eastman*, 188 B.R. at 624 (a pending Chapter 7 case could be dismissed under § 707(a) or § 305(a)(1)); *In re Williamsburg Suites, Ltd.*, 117 B.R. 216, 218 (Bankr. E.D. Va. 1990) (dismissal pursuant to § 305 was appropriate even where petitioning creditors established a case for an involuntary bankruptcy); D. Epstein, S. Nickles & J. White, Bankruptcy § 2-5g (1992) ("[A]n involuntary petition that satisfies all of the requirements of section 303 can be dismissed under section 305…); 2 Alan N. Resnick & Henry J. Sommer, Coller on Bankruptcy ¶ 305.LH[2], at 305-12 to 305-13 (15th ed.rev. 2005)…"

*Macke, supra,* 370 B.R. at 246 [emphasis added].

The analysis as to whether "the interest of creditors and the debtor would be better served by dismissal" is based on the totality of the circumstances. *In re Eastman* (B.A.P. 9th Cir. 1995) 188 B.R. 621, 624. Before a court may refrain from exercising jurisdiction over an otherwise proper case, it must make specific and substantiated findings that the interests of the creditors and the debtor will be better served by dismissal or suspension. *See In re Spade*, 258 B.R. 221, 225 (Bankr. D. Colo. 2001), aff'd, 269 B.R. 225 (D. Colo. 2001); *see generally* 2 Collier on Bankruptcy, *supra,* ¶ 305.02[2] at 305-6 to 305-9.

In the *Macke* case, the BAP noted that the forum in which litigation was already pending was the more appropriate forum for resolving the parties' disputes, and that the commencement of the bankruptcy was an effort to forum shop. Specifically, the BAP found:

> [T]he bankruptcy court's factual findings reflected its analysis of the totality of the circumstances, and supported its conclusion that those circumstances justified a § 305(a)(1) dismissal. Specifically, the bankruptcy court found it had jurisdiction to order relief on the involuntary petition under § 303. However, it also found that this was essentially a two-party dispute; there was an out-of-court assignment for the benefit of creditors, including a sale of Macke's assets; Wechsler did not participate in the assignment proceeding; there was an absence of a bankruptcy purpose or need to reorganize; there was pending litigation in another forum; and another forum would be more appropriate for the resolution of any lingering disputes between the parties. Significantly, the court also found that, in commencing the involuntary case, Wechsler was forum-shopping. Importantly, these factual findings and the bankruptcy court's decision to dismiss the involuntary case under § 305(a)(1) have not been challenged by the parties in either the appeal or cross-appeal.

*Macke, supra,* 370 B.R. at 247-248.

Having already established that the petition does not comply with the requirements of 11 U.S.C. § 303(b), the totality of the circumstances militates decisively in favor of dismissal pursuant to 11 U.S.C. § 305. As was the case in *Macke,* this dispute is, at its core, a dispute between the Debtor and Petitioning Creditor, who claims to be the only creditor of the Debtor. That dispute is the subject of ongoing litigation in both the District Court Action and the Dissolution Action. No bankruptcy purpose exists for the bankruptcy case, and thus, the only logical explanation is that the Petitioning Creditor filed it in bad faith in an attempt: (a) to forum

shop; and (b) to gain a temporal advantage over the parties in the District Court Action and the Dissolution Action. (Farrise Declaration, p.2, ¶9]

Certainly, the Bankruptcy Court should not countenance such a blatant end-run forum shopping by Petitioning Creditor, especially when there is ongoing litigation in appropriate forums.

Finally, it is interesting to note that Petitioning Creditor did not obtain any other creditor to join in the involuntary petition. The only logical conclusion is that no other creditor would join because it would not be in their best interest to do so. Further, any argument that the Petitioning Creditor might attempt to make that it believed there were less than 12 creditors cannot withstand scrutiny. The Petitioning Creditor was a lender to the Debtor's professional corporation and would have access to financial information about the professional corporation and its guarantor, the Debtor. The Petitioning Creditor intervened into the Dissolution Action and therefore has access to financial information of the Debtor.

A consideration of the totality of circumstance shows that the petition does not comply with 11 U.S.C. § 303(b), that there is no bankruptcy purpose served by the filing, and that the petition appears to be a bad faith effort to forum shop and gain a tactical advantage in the pending District Court Action and Dissolution Action compels the conclusion that this case should be dismissed, or, in the alternative, the Court should abstain from exercising jurisdiction pursuant to 11 U.S.C. § 305(a).

**B. The Court Should Order Petitioning Creditor to Pay Debtor's Attorneys' Fees and Costs and Punitive Damages Pursuant to 11 U.S.C. § 303(i).**

If the case is dismissed, the Petitioning Creditor should be ordered to pay the Debtor's attorneys' fees and costs, as well as punitive damages, pursuant to 11 U.S.C. § 303(i). This is true even if there is no finding that the involuntary petition was frivolous or meritless. *In re Johnston Hawks Ltd.,* 72 B.R. 361, 365-66 (Bankr. D. Hawaii 1987).

11 U.S.C. § 303(i) provides:

> (i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may

grant judgment –
>   (1) against the petitioners and in favor of the debtor for –
>       (A) costs; or
>       (B) a reasonable attorneys' fee; or
>   (2) against any petitioner that filed the petition in bad faith, for –
>       (A) any damages proximately caused by such filing; or
>       (B) punitive damages.

As discussed above, the filing of the involuntary bankruptcy served no bankruptcy purpose, was made in bad faith and for litigation purposes only, and amounts to nothing more than forum shopping. On remarkably similar facts, the *Macke* Court was called on to decide if 11 U.S.C. § 303(i) applies when a case is dismissed under 11 U.S.C. § 305, and if so, whether fees should be awarded. The answer to both questions was "yes":

> We hold the plain meaning of § 303(i) provides that, unless an involuntary petition has been dismissed with the parties' consent, and without the debtor's waiver of the right to judgment under §303(i), the bankruptcy court, based upon the totality of the circumstances, may, in its discretion, award attorneys' fees and costs under § 303(i)(1) for a § 305(a)(1) dismissal of an involuntary petition.

*Macke, supra,* 370 B.R. at 253.

As the Ninth Circuit made clear in *Higgins*, "bad faith is not a prerequisite to awarding attorney's fees and costs under § 303(i)(1)" and "'any petitioning creditor in an involuntary case... should expect to pay the debtor's attorney's fees and costs if the petition is dismissed.'" [Citation omitted.] *Higgins, supra,* 379 F.3d at 706-707. The bankruptcy court should consider the following factors in awarding attorney's fees and costs under § 303(i)(1): 1) "the merits of the involuntary petition," 2) "the role of any improper conduct on the part of the alleged debtor," 3) "the reasonableness of the actions taken by the petitioning creditors," and 4) "the motivation and objectives behind filing the petition." [Citations omitted.] *Higgins, supra,* 379 F.3d at 707.

Section 303(i)(2) provides for <u>both</u> actual and punitive damages. *In re Southern Calif. Sunbelt Developers, Inc.,* 608 F.3d 456, 465 (9th Cir. 2010); *see also In re Oakley Custom Homes, Inc.,* 168 B.R. 232, 241 (Bankr. D. Colo. 1994); *In re Advance Press & Litho, Inc.,* 46 B.R. 700, 701 (Bankr. D. Colo. 1984).

In addition, applicable case authority holds that a case can be dismissed and punitive damages awarded solely because the involuntary petition was filed in bad faith, *even if all of the other requirements for the granting of the petition have been met and even in the absence of any actual damages.* See, e.g., *In re WLB-RSK Venture*, 296 B.R. 509 (Bankr. C.D. Cal. 2003) (involuntary petition brought by a partner with a 50% interest dismissed as a "bad faith" filing because it was filed as part of a forum-shopping litigation tactic in order to stall a pending action on a promissory note, and to provide petitioner with a new opportunity to set aside a settlement after his prior litigation efforts to do the same had failed); *In re Wavelength, Inc.,* 61 B.R. 614, 621 (9th Cir. BAP 1986) ("The Bankruptcy Code specifically authorizes punitive damages 'even in the absence of or in addition to actual damages.' [citations omitted]"); *In re Oakley Custom Homes,* 168 B.R. 232, 241 (Bankr. D. Colo. 1994) ("An award of punitive damages may enter whether or not there is proof of actual damages"); *In re Advance Press & Litho, Inc.,* 46 B.R. 700 (Bankr. D. Colo. 1984) ("[T]he Bankruptcy Code specifically authorizes, in § 303(i)(2), punitive damages even in the absence of or in addition to actual damages"); *In re Atlas Mach. & Iron Works,* 190 B.R. 796, 804 (Bankr. E.D. Va.1995) ("[S]ection 303(i)(2)(B) does not require proof of actual damages as a prerequisite to an award of punitive damages.").

Whether a party acted in "bad faith" is essentially a question of fact, measured by an "objective test" that asks "what a reasonable person would have believed." [Citations omitted.] *In re Wavelength, Inc., supra,* 61 B.R. at 620.

Other cases where the courts have found "bad faith" are *In re Kearney,* 121 B.R. 642, 646-647 (Bankr. M.D. Fl. 1990) [a petitioner who knew or should of known that the alleged debtor had more than 12 creditors acted in bad faith by filing an involuntary petition by himself]; *In re Fox Island Square Partnership,* 106 B.R. 962, 968-969 (Bankr. N.D. Ill. 1989) (An involuntary petition was filed in objective bad faith because it was not based on "reasonable inquiry." The petitioner knew its claim was highly disputed.); *In re Marsch,* 36 F.3d 825, 828 (9th Cir. 1994) (an involuntary petition can be dismissed for bad faith, and bankruptcy petitions of any kind should not be employed for improper purposes).

In the present case, the Debtor has at least 12 creditors (excluding employees and insiders), well above the threshold that precludes a single creditor from filing an involuntary petition, and yet Petitioning Creditor is the <u>only</u> petitioning creditor. By reason of its relationship with the Debtor and its participation in the Dissolution Action, the Petitioning Creditor cannot, in good faith, argue it was not aware of the number of creditors. Despite the foregoing, the Petitioning Creditor elected to proceed as the *only* petitioning creditor, leading to the inescapable conclusion that its petition was filed in bad faith.

Furthermore, the Petitioning Creditor had actual knowledge, based upon the multiple pending disputes in the District Court Action and Dissolution Action and its breach of the agreement it entered into with the Debtor in the District Court Action, that its claim was highly disputed.

Lastly, the Petitioning Creditor appears to be using the involuntary for another improper purpose, namely to gain an advantage regarding the pending Dissolution Action and the back door rulings in that action. The Petitioning Creditor already has appropriate forums in which to litigate its claims. Using an involuntary petition to collect a debt is an improper use of this Court. The Bankruptcy Court is not a substitute for customary collection procedures. *In re Goldsmith,* 30 B.R. 956, 963 (Bankr. E.D. N.Y. 1983); *In re Johnston Hawks Ltd., supra,* 72 B.R. at 365-66 (finding that a Chapter 7 involuntary petition was filed in bad faith and describing two tests for finding the existence of bad faith in the context of an involuntary, including *"when the creditor's actions were an improper use of the Bankruptcy Code as a substitute for customary collection procedures"*). When the purpose for filing an involuntary petition is a non-bankruptcy purpose, and when as here, the filing was ill-advised, the Court *must* find bad faith. *In re Laclede Cab Co.,* 76 B.R. 687, 693 (Bankr. E.D. Mo. 1987) (finding of "bad faith" where petitioner's involuntary filing was deemed filed "for a non-bankruptcy purpose, most likely in an attempt to force the alleged debtor to enter into… negotiations."); *see also In re Cannon Express Corporation*, 280 B.R. 450, 455 (Bankr. W.D. Ark. 2002) (finding of "bad faith" under the objective standard warranting punitive damages where the involuntary was filed to gain leverage over debtor as a means of extracting payment).

The totality of the circumstances in this case compels a finding of "bad faith" on the part of Petitioning Creditor. As such, the Debtor is entitled to an award of both actual *and* punitive damages against the Petitioning Creditor.

The Debtor has already incurred attorneys' fees in responding to the involuntary petition that has been filed in bad faith. In addition, the Debtor will incur additional attorneys' fees and costs through the hearing on the instant motion to dismiss. The Debtor asserts that the Court should, as part of its order dismissing the case, award the Debtor its attorneys' fees and costs, and punitive damages according to proof based upon a future submission by the Debtor.

### III. CONCLUSION

For all the foregoing reasons, the Debtor respectfully requests that the instant motion to dismiss the involuntary bankruptcy case be granted and that she be awarded her attorneys' fees, costs and punitive damages in an amount that the Court deems just and proper.

Dated: September 16, 2019        Kornfield, Nyberg, Bendes, Kuhner & Little, P.C.

By: /s/ Eric A. Nyberg
(Bar No. 131105)
Attorneys for Debtor Simona Farrise Best